IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| DET BEVERAGES, L.L.C., | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
| v. | )   Case No. 3:23-cv-00363 |
| | )   **Judge Aleta A. Trauger** |
| KENTUCKY BOURBON DISTILLERS, | ) |
| LTD. d/b/a WILLETT DISTILLERY, | ) |
| | ) |
|    Defendant. | ) |

## MEMORANDUM

Before the court is the Motion to Dismiss First Amended Complaint (Doc. No. 19), filed by defendant Kentucky Bourbon Distillers, Ltd. d/b/a Willett Distillery ("Willett"), seeking dismissal of the contract-related claims asserted in the plaintiff's First Amended Complaint ("FAC") (Doc. No. 15). Plaintiff DET Beverages, LLC ("DBLLC") has filed a written Response in opposition to the motion (Doc. No. 22), and Willett has filed a Reply (Doc. No. 23) in further support thereof. For the reasons set forth herein, the motion will be granted and this case will be dismissed.

### I.    LEGAL STANDARD

A party may move to dismiss a claim for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). In analyzing a 12(b)(6) motion, the court generally must "construe the complaint in the light most favorable to the plaintiff and accept all allegations as true." *Taylor v. City of Saginaw*, 922 F.3d 328, 331 (6th

Cir. 2019) (quoting *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012)). However, the court "need not accept as true legal conclusions or unwarranted factual inferences." *Bouye v. Bruce*, 61 F.4th 485, 489 (6th Cir. 2023) (quoting *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581–82 (6th Cir. 2007)).

In addition, although a court ruling on a Rule 12(b)(6) motion may not consider matters outside the pleadings unless it converts the motion into one for summary judgment, *see* Fed. R. Civ. P. 12(d), documents attached to pleadings are considered part of the pleadings for all purposes. Fed. R. Civ. P. 10(c). Thus, the court's consideration of documents referred to in a complaint and integral to the claims does not convert a motion to dismiss into a motion for summary judgment. *Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.,* 508 F.3d 327, 335–36 (6th Cir. 2007). It is "well settled" that, "[w]hen a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations." *Cates v. Crystal Clear Techs., LLC*, 874 F.3d 530, 536 (6th Cir. 2017) (citations omitted).

## II. FACTS AND PROCEDURAL HISTORY

DBLLC filed its original Complaint in April 2023, asserting a single claim for "Breach of Contract and Declaratory Judgment," which actually sought both a declaration of DBLLC's rights under a contract as well as damages incurred from Willett's alleged breach of that contract. (Doc. No. 1, at 11, 12.) Willett filed a Motion to Dismiss, to which DBLLC responded by filing the FAC, along with the same ten exhibits that were attached to the original Complaint. The FAC asserts two separate "causes of action": (1) a claim for breach of contract, for which the plaintiff seeks damages and a declaratory judgment; and (2) a statutory claim for damages and injunctive relief under Tenn. Code Ann. § 47-25-1509, based on an alleged violation of Tenn. Code Ann. § 47-25-1508, which governs the conveyance of liquor distribution franchises in Tennessee. In support of these claims, DBLLC alleges as follows.

A.      **The Parties and Relevant Non-Parties**

DBLLC is a limited liability company with its principal place of business in Nashville, Tennessee. (FAC ¶ 2.) It is a wholly owned subsidiary of Reyes Holdings, L.L.C. ("Reyes"). (*Id.* ¶¶ 4, 16.) DBLLC serves as the "operating entity for Reyes's beverage distribution in Tennessee." (*Id.* ¶ 15.)

DET Distributing Company ("DET") was a Tennessee corporation based in Nashville; it was legally dissolved as of December 31, 2022. (*Id.* ¶ 5.)

Willett is a Kentucky corporation whose principal place of business is in Bardstown, Kentucky. (*Id.* ¶ 3.) Although this is not expressly alleged in the FAC, the court infers from its name and allegations in the FAC that Willett is a distiller in the business of making and selling whiskey, primarily bourbon.

B.      **The Relationship Between DET and Willett**

Prior to its dissolution, DET was the sole distributor for certain brands of whiskey produced by Willett, from 2016 through November 2022, pursuant to two franchise agreements executed pursuant to Tenn. Code Ann. § 57-3-301(e)(1) ("Franchise Agreements").[1] (FAC ¶ 9; *see also* Doc. No. 15-1, at 2–3.) The Franchise Agreements are brief and notably devoid of detail. The first, dated September 14, 2016, citing § 57-3-301(e)(1), appointed DET as Willett's sole distributer/wholesaler of "Willett–Whiskey" in the 35 Tennessee counties identified in the contract. (Doc. No. 15-1, at 2.) The second agreement, which was expressly denominated as "A

---

[1] The referenced statutory provision states: "No brand may be introduced into the state except pursuant to written contract to sell such brand in this state between the manufacturer, brewer or importer of such brand and the Tennessee wholesaler who is to sell such brand in this state. Every contract shall contain the specified area in which such wholesaler will sell such brand and no more than one wholesaler may sell such brand in any specified area." Tenn. Code Ann. § 57-3-301(e)(1).

Contract" and not as an addendum or renewal of an existing contract, was fully executed on August 1, 2022 and appointed DET as Willett's sole distributor of Willett Kentucky Straight Bourbon Whiskey in ten Middle Tennessee counties, a subset of those identified in the 2016 Franchise Agreement. (*Id.* at 3.) Both contracts granted distribution rights to DET in the identified geographical region "in perpetuity." (FAC ¶ 10.)

According to DBLLC, in the "normal course of business," DET would submit purchase orders to Willett for its products "at quantities and prices influenced by supply and market demand at the time of purchase." (FAC ¶ 11.) Such prices were "negotiated in good faith and agreed upon by the parties." (*Id.*) Willett ordinarily would receive the purchase orders, prepare the ordered quantities for shipment, and notify DET that the product was ready for delivery, at which time DET's contracted carrier would pick up the order in Kentucky and deliver it to DET's headquarters in Nashville. Willett would issue invoices for the purchase orders, which DET would pay. (*Id.*) This practice continued from September 2016 through November 2022, during which time Willett's sales figures in Middle Tennessee "increased substantially," and DET "sold all of the allocation it received from [Willett] under the Franchise Agreements." (*Id.*) The Franchise Agreements did not, on their face, require Willett to supply DET with any specified amount of product or require DET to sell any particular amount of product, and they did not set the wholesale price of any of Willett's products. DBLLC maintains that the successful relationship between DET and Willett largely depended on "the parties' good faith engagement over purchase order terms," including "product quantity, price, quality, and maturity," none of which is defined in the Franchise Agreements. (*Id.* ¶ 12.)

    C.    **The "Transfer"**

On September 2, 2022, DBLLC, DET, Reyes, and the Estate of George Frederick Dettwiller II ("Estate") executed an Asset Purchase Agreement ("APA") pursuant to which

DBLLC agreed to acquire substantially all of the assets of DET, including its beverage distribution business. (*Id.* ¶ 14.) The assets to be acquired by DBLLC ("Acquired Assets") included, among other things, the exclusive distribution rights for all beverage brands and supplies held by DET, specifically including whatever rights DET had to distribute Willett whiskeys in Tennessee. (*Id.* ¶ 15.) However, in order to "preserve" DET's "capable leadership," Reyes engaged "substantially all" of DET's "officers and managers to continue at the helm of DBLLC," post-acquisition. (*Id.* ¶ 16.) Essentially, according to DBLLC, it "stepped into the shoes" of DET "under the Franchise Agreements and with the stated intention of continuing in the business of wholesale distribution of wine, beer, and spirits, including and especially the highly allocated (and in-demand) brands produced by [Willett]." (*Id.*) The APA's anticipated closing date was November 4, 2022. (*Id.* ¶ 17.)

On September 7, 2022, Reyes circulated a letter ("September 7 Letter"), on behalf of DBLLC and DET, to all suppliers with which DET had exclusive distribution franchise agreements. (*Id.* ¶ 17.) A copy of September 7 Letter is attached as an exhibit to the FAC. The letter states, in relevant part:

> Please be advised that [DBLLC], [Reyes], and [DET] recently entered into a definitive agreement (the "Agreement") pursuant to which DBLLC has agreed to acquire substantially all of DET's assets related to its beverage distribution business.
>
> The distribution rights . . . for your portfolio are included in the Agreement and, subject to your approval, will be transferred to DBLLC at closing (the "Transfer"). DBLLC and DET have targeted November 4, 2022 for the closing of the Agreement; however; **DBLLC hereby requests that you provide written approval of the Transfer no later than October 14, 2022.** We are excited by the prospect of promoting and developing your products in the market and will make ourselves readily available to answer any questions you may have and do whatever else we can to assist you in your review of the Transfer.
>
> Your approval of the Transfer can be accomplished by (i) countersigning this letter below confirming your appointment of DBLLC as the exclusive distributor for your portfolio in the territory currently serviced by DET, as set forth on Exhibit A, once the transaction is completed, or (ii) providing a written approval to DBLLC and submitting therewith a distribution agreement to DBLLC for your portfolio for the

> geographic territory currently serviced by DET, which agreement, containing mutually agreeable terms which are in compliance with Tennessee law, may be executed upon closing.
>
> Please let me know if there is anything you need to expedite your approval of the Transfer. . . .

(Doc. No. 15-2, at 2 (emphasis in original).) The September 7 Letter was signed by Ian Lakes on behalf of Reyes. (*Id.*) Lakes noted that he was the "contact for DBLLC" and provided his phone number and email address, as well as contact information for DET's point person. The attached Approval of Transfer and Appointment, if signed, would have signaled Willett's consent to the Transfer and the appointment of DBLLC as "the exclusive distributor for the undersigned's portfolio," effective November 4, 2022, in the territory identified on Exhibit 1 to the Approval.[2]

Willett responded to the September 7 Letter with its own letter, dated September 29, 2022, stating unequivocally that it was "exercising its rights under Tennessee state law to not authorize the consent and transfer of its brands from [DET] to DBLLC." (Doc. No. 15-3, at 2 (emphasis in original).) It declined to execute the requested Approval of Transfer and Appointment attached to the September 7 Letter and "consider[ed] the Brands released." (*Id.*) Willett further stated that, while it appreciated the "opportunity" to sign with Reyes, it "believe[d] that a wholesaler with greater craft and specialty spirits distribution and market experience would better suit its needs." (*Id.*) It also noted that it had identified a different distributor that it intended to appoint as its substitute distributor "in the very near future." (*Id.*)[3]

On October 10, 2022, a lawyer for DET sent Willett another letter, referencing the intended transaction with DBLLC and Reyes, the anticipated November 4, 2022 closing date for that

---

[2] This list of counties bears little resemblance to the lists on the Franchise Agreements, as it includes 15 counties that were not part of DET's territory under either Franchise Agreement, and omits even more than that.

[3] The FAC does not allege that Willet has ever actually appointed a substitute distributor.

transaction, and Willett's recent communication of its refusal to consent to the Transfer. (Doc. No. 15-4, at 2.) This letter asserted that Tennessee law limited Willett's ability to withhold consent to the Transfer, citing for the first time (in the parties' exchange) Tenn. Code Ann. § 47-25-1508. According to DET, Willett's refusal to consent constituted a violation of § 47-25-1508, for which § 47-25-1509 provided a private cause of action. The letter further "insist[ed] that [Willett] consent to the Transfer," as purportedly required by Tennessee law, gave it a deadline of October 21, 2022 to do so, and threatened "legal remedies" to secure Willett's compliance with Tennessee law, in the event Willett withheld such consent. (Doc. No. 15-4, at 2.) Willett did not immediately respond.

On October 26, 2022, co-counsel for DET sent yet another missive to Willett ("October 26 Letter"), again arguing that Tennessee law did not give Willett the right to consider its brands released and to seek another wholesaler/distributor. (Doc. No. 15-5, at 2.) Instead, according to the October 26 Letter, Willett was permitted under Tennessee law to withhold its consent to the transfer "*only where it has agreed to match the terms being offered by Reyes*," as set forth in Tenn. Code Ann. § 47-25-1508(c), which DET did not expect to occur. (*Id.* (emphasis added).) DET therefore presumed that Tennessee law "allow[ed] [it] to transfer its rights to your brand(s) to DBLLC without [Willett's] consent or approval,." (Doc. No. 15-5, at 2.) The lawyer for DET provided notice that DET intended to proceed with the Transfer and that, if Willett refused to honor the Transfer, it would be exposed to claims for damages, injunctive relief, and attorney's fees under Tenn. Code Ann. § 47-25-1509. (*Id.*)

The next day, counsel for Willett responded to DET's two attorneys' letters, as follows:

> . . . Our client is not in a position, or legally required, to consent to a transaction of which it has not been provided sufficient information and detail.
>
> In a letter dated September 7, 2022, Willett received a communication from Reyes Beer Division requesting that Willett consent to the transfer of the distribution rights from DET to DET Beverages, L.L.C., a wholly owned subsidiary of Reyes Holdings, L.L.C.

> Since your letter makes reference to the franchise law of the State of Tennessee, Tenn. Code Ann. § 47-25-1501, *et seq.*, it is important for us to clarify that we do not believe that the "business" has been transferred from DET to the Reyes subsidiary. This has, rather, been the sale of a number of assets, an undisclosed collection of some or all of the DET operations. Apparently included in the sale is the contract between Willett and DET.
>
> Even assuming that the transfer of individual assets, including the personal services contract between Willett and DET, constitutes a transfer of the business of the entire distributorship, the notice that was provided on September 7, 2022 is deficient.
>
> In order for the statutorily required notice to be effective, the notice must satisfy the requirements of Tennessee law. Pursuant to Tenn. Code Ann. § 47-25-1508, the transfer of the franchisees business must be fully and completely documented in a notice provided to our client, the franchisor. Quoting from the statute: "*Such individual [DET] has notified the franchisor [Willett] in writing of the nature, terms and provisions of such transfer.*" [emphasis added]
>
> Nothing in the letters that were sent provide any of the details of the transaction including the cost, the asset values transferred (particularly the value accorded to the DET – Willett contract), the timing, or any notice that Willett would be afforded the opportunity to match an offer (once a proper statutory notice with details is provided) as it relates to Willett. Our client will review your request when it receives the statutory notice to which it is entitled. Our client will respond within 60 days of the receipt of that notice.

(Doc. No. 15-6, at 2–3 (alternations and emphasis in original).)

DET's co-counsel responded to this letter on October 31, 2022. (Doc. No. 15-7.) In this letter, DET purported to clarify that the Transfer qualified as a transfer of DET's entire business. It disagreed with Willett's counsel's reading of the requirements of Tenn. Code Ann. § 47-25-1508, asserted that Willett had "waived any right to insist on strict compliance" with § 47-25-1508 based on its failure to mention the statute in its initial response to Reyes' request for its consent to the Transfer, and reiterated DET's intention to proceed with the Transfer and its expectation that Willett would honor that transaction.

After this final exchange, according to DBLLC, Willett "abandoned any further communications" regarding the Transfer, and DBLLC, DET, Reyes, and the Estate proceeded to

close on the APA on November 4, 2022. (FAC ¶¶ 30, 31.) DET technically remained in existence until its dissolution on December 31, 2022. (*Id.* ¶ 31.)

On November 15, 2022, Willett filled a purchase order from DBLLC for $139,860.50 of Willett brand spirits. (*Id.* ¶ 32.) Willett subsequently contacted DBLLC for payment, which DBLLC promptly remitted. (*Id.*) According to DBLLC, Willett's filling of the purchase order and its requesting and depositing payment for it without objection constituted its recognition that "the Transfer of [DET's] distribution rights to DBLLC was effective under Tennessee law." (*Id.* ¶ 34.)

DBLLC submitted a subsequent purchase order on January 4, 2023, but Willett ignored this order and subsequent correspondence about it. DBLLC's President then emailed Willett's Master Distiller, who responded that they were "currently ironing out some compliance issues on our end." (*Id.* ¶ 34.) Willett subsequently refused to fill the January 4 purchase order and has "provided no indication that it intends to fill any future order from DBLLC or otherwise adhere to its obligations under the Franchise Agreements." (*Id.*)

DBLLC asserts that Willett's refusal to honor the Transfer and its refusal to fill any purchase orders after the November purchase order constitutes a breach of the duty of good faith and fair dealing. (*Id.* ¶ 59.) As set forth above, it seeks damages and injunctive relief under Tenn. Code Ann. § 47-25-1509 and for breach of contract.

After DBLLC filed the FAC, the court denied as moot the original Motion to Dismiss, and Willett promptly filed the present Motion to Dismiss the FAC.

## III. ANALYSIS

### A. Count 2: Alleged Violations of Tenn. Code Ann. §§ 47-25-1501 *et seq.*

The parties appear to agree that the transfer or conveyance of liquor distribution franchises in Tennessee is generally governed by Tenn. Code Chapter 25, Part 15, pertaining to "Franchise

Terminations, Nonrenewals, or Modifications." The parties also agree that their dispute implicates Tenn. Code Ann. § 47-25-1508, in particular. That provision states in relevant part:

> (b) Any individual owning or deceased individual who owned an interest in a franchise may transfer the franchisee's business to a person other than such individual's spouse, child, grandchild, parent, brother or sister; provided, that:
>
> > (1) Such individual has notified the franchisor in writing of the nature, terms and provisions of such transfer;
> >
> > (2) Such individual has provided the franchisor the opportunity to match the terms and conditions of such offer; and
> >
> > (3) The proposed transferee meets the nondiscriminatory, material, and consistently applied and reasonable qualifications and standards of the franchisor.
>
> (c) If the franchisor disapproves of a transfer as proposed in subsection (b), the consent or approval of the franchisor shall not be required if the franchisor does not elect to match the terms and conditions of such transfer or proposal, within sixty (60) days of notice, and another transferee who meets its requirements matches the terms and conditions of such offer.

Tenn. Code Ann. § 47-25-1508(b)–(c).[4]

In its Memorandum in support of its Motion to Dismiss, Willett makes two primary arguments in support of dismissal of the claim based on the alleged statutory violation:

> (1) The Franchise Agreements are not transferable without its consent, because § 47-25-1508 applies to "individuals"—not business entities—transferring their rights in a liquor distribution franchise; and
>
> (2) Even if § 47-25-1508 does apply to the Transfer, DET did not comply with it, because it did not provide the notices required by subsections (b)(1) and (b)(2)—specifically, it did not provide written notice of the "nature, terms and provisions" of the Transfer or give Willett the "opportunity to match the terms and conditions of such offer"—such that Willett never incurred an obligation to consent to the Transfer.

---

[4] The term "franchise" is defined for purposes of Part 15 to mean only franchises "where the franchisee is required to be licensed under § 57-3-203," and a "franchisee" is a person required to be licensed under § 57-3-203. Tenn. Code Ann. § 47-25-1502(1), (2). Section 57-3-203 pertains to licenses to sell alcoholic beverages at wholesale.

(*See* Doc. No. 20, at 11–12, 14–17; *see also* Doc. No. 23, at 2 (summarizing arguments).)

DBLLC responds at great length to the first argument, asserting that "individual" does not mean only a natural person but also encompasses entities. It does not address the second at all, other than by characterizing it as an attempt to disguise a dispute about the facts as a legal argument and asserting that Willett never provided a legitimate reason for withholding its consent to the Transfer and failed to negotiate or match the proposed Transfer, "despite ample opportunities to do so over several weeks." (Doc. No. 22, at 22–23.) It contends on that basis that, "under Section 1508, [Willett's] consent was not required to lawfully effect the Transfer." (*Id.* at 22.)

DBLLC's assertions that it plausibly alleges a breach of § 1508 and that Willett is attempting to mask factual disputes as legal argument overlooks the principle that, where documents attached to a pleading contradict allegations in the pleading, the written documents take precedence. *Cates v. Crystal Clear Techs., LLC*, 874 F.3d 530, 536 (6th Cir. 2017). And, as Willett points out, the plaintiff's allegations characterizing the correspondence between the parties are simply not supported by the correspondence itself.

For instance, DBLLC alleges that its September 7 Letter to Willett "provided written notice" to Willett "of the nature, terms, and provisions of the proposed [T]ransfer" and provided Willett "notice and opportunity to match the terms of the proposed Transfer outlined in the letter." (FAC ¶¶ 17, 19.) The September 7 Letter, however, clearly and unmistakably failed to provide the written notice required by § 47-25-1508(b)(1). It states only that DBLLC, a division of Reyes, had entered into an agreement with DET to "acquire substantially all of its assets related to its beverage distribution business," specifically including the right to distribute Willett products in the geographic region currently serviced by DET. (Doc. No. 15-2, at 2.) The letter does not include a valuation of those rights or the amount that DBLLC was offering for the right to distribute Willett

products. It does not give Willett an opportunity to match those terms—nor did it give Willett 60 days to match those terms, as required by § 1508(c).

The September 7 Letter requests Willett's approval of the conveyance, tacitly appearing to recognize that Willett's consent to the Transfer was required. In any event, DET (actually Reyes) made no attempt to satisfy its notice obligations under § 1508(b). When Willett withheld consent, DET sent two "lawyer" letters that mentioned, for the first time, § 1508 and purported to notify Willett that its ability to withhold consent to the Transfer was circumscribed by the statute. But DET again made no effort to comply with the statutory provisions setting forth its notice obligations and, instead, jumped immediately to threatening litigation. (Doc. Nos. 15-4, 15-5.)

Willett responded to these letters by pointing out that its obligation to "match" terms in order to withhold consent to a transfer was never triggered, because the notice provided by DET was not sufficient. Willett expressly asked DET to provide notice of the "nature, terms, and provisions" of the Transfer and stated that it would respond within 60 days of its "receipt of the statutory notice to which it is entitled." (Doc. No. 15-6, at 3.) Rather than salvaging the relationship at this point (and, if necessary, postponing the closing on the APA) by simply disclosing the terms of the Transfer and giving Willett the opportunity to consent or to match those terms, DET doubled down on its (mis)reading of the statute, reiterated that Willett was obligated to provide a legitimate basis for withholding consent to the transfer, and asserted that Willett had "waived" its right to credibly claim that it had not received adequate notice.

The attorney gamesmanship displayed by DET's letters is, frankly, baffling,[5] but it is clear to the court that, even assuming the term "individual" as used in § 1508 also applies to entities,[6] DET (whether through Reyes or its own attorneys) never complied with § 1508(b)(1) and (2), upon which its ability to "transfer [its] to a person other than such individual's spouse, child, grandchild, parent, brother or sister" depended. Tenn. Code Ann. § 47-25-1508(b). Never having provided the statutorily required notice, DET's ability to transfer without Willett's consent was never triggered, and Willett incurred no obligation either to consent, to justify its withholding of consent, or to "elect to match the terms and conditions of such transfer or proposal." *Id.* § 47-25-1508(c).

In short, the correspondence attached by the plaintiff to the FAC shows unequivocally that Willett, in withholding its consent to the Transfer, did not violate § 47-25-1508, and the FAC, as a result, fails to state a claim based on such violation. DBLLC is not entitled to damages, injunctive relief, or attorney's fees under § 47-25-1509. Willett's Motion to Dismiss will be granted with respect to its statutory claim. The court finds it unnecessary to address the parties' other arguments.

---

[5] Willett surmises—and the court finds it plausible—that Reyes, being in the business of beer distribution, erroneously presumed at the time it entered the APA and sent the September 7 Letter to Willett that the same rules applied to the transfer of beer and liquor franchises under Tennessee law. They do not. Tenn. Code Ann. § 57-5-504 governs the transfer of a beer wholesaler's franchise. Notably, this statute requires only 30 days written notice, and, although it requires consent if the transferee is not a designated "member" (generally defined as a close relative or inheritor of a deceased individual owning an interest in a wholesaler, *see* Tenn. Code Ann. § 57-5-502(3)), such consent may not be unreasonably withheld. Tenn. Code Ann. § 57-5-504(e). The language of Reyes' initial communication to Willett suggests that Reyes may have believed that these terms applied to the transfer of a liquor distribution franchise as well.

[6] It appears that no other court has applied or construed Tenn. Code Ann. § 47-25-1508, and this court finds it unnecessary to reach the question of how to define "individual" as used in the statute. However, the court is not, at first blush, persuaded that the term "individual" as used in § 1508 means anything other than a natural person—one who might conceivably have a spouse, child, grandchild, parent, brother or sister and who might be "deceased." Section 1508 is the only provision in Part 15 that uses the term "individual." Elsewhere, the statute employs the term "person" or "franchisee," both of which are defined to include entities as well as natural persons. Tenn. Code Ann. § 47-25-1502(2) & (6).

## B. Count 1: Breach of Contract

The same conclusion effectively dictates dismissal of the breach of contract claims as well. Under Tennessee law, to state "a *prima facie* case for a breach of contract claim, a plaintiff must allege: '(1) the existence of an enforceable contract, (2) nonperformance amounting to a breach of the contract, and (3) damages caused by the breach of the contract.'" *Tolliver v. Tellico Vill. Prop. Owners Ass'n, Inc.*, 579 S.W.3d 8, 25 (Tenn. Ct. App. 2019) (quoting *C & W Asset Acquisition, LLC v. Oggs*, 230 S.W.3d 671, 676–77 (Tenn. Ct. App. 2007)).

DBLLC purports to allege the existence of an enforceable contract, the first element, but that allegation is premised upon the *legal* presumption that "the Franchise Agreements are valid and binding contracts between DBLLC and [Willett]." (FAC ¶ 62.) That presumption is premised, in turn, upon DBLLC's assertion that, "[p]ursuant to the express terms of the APA and Tennessee Code Annotated § 47-25-1508, on or about November 6, 2022, the rights related to Defendant's brands and products were transferred to DBLLC by operation of Tennessee law." (FAC ¶ 53.) This, again, is a statement of law rather than a factual allegation that the court would be required to accept as true. And, as set forth above, the irrefutable fact is that DET never complied with its statutory notice obligations, so Willett never became obligated under § 47-25-1508 either to consent to the Transfer or to match the terms of the proposal. DET, in short, never validly transferred its franchise rights to DBLLC, and no binding contract exists between DBLLC and Willett. On this basis alone, DBLLC fails to state a claim for breach of contract against Willett. The Motion to Dismiss will be granted as to this claim as well.

## IV. CONCLUSION

For the reasons set forth herein, the court will grant Willett's Motion to Dismiss the FAC. (Doc. No. 19.)

An appropriate Order is filed herewith.

_____
ALETA A. TRAUGER
United States District Judge